Roig, Plaintiff and Appellant, *v.* Landrau, Defendant and Appellee.

Appeal from the District Court of San Juan in an Action of Debt.

No. 2518.—Decided January 23, 1923.

Contract—Purchase and Sale — Lump Sum — Unit of Measurement — Construction.—The principal question in this case is whether the sale of 150 acres of sugar cane made by the plaintiff to the defendant and shown to be only 127 acres by the survey made by an expert appointed by the court, was made for a lump sum or for a unit of measurement. There is in the record a letter from the plaintiff to the defendant stating that in accordance with the wish of the latter the former had surveyed the cane fields involved in the suit and the survey showed an excess of 1.76 acres which the plaintiff hoped would be paid for as soon as possible. *Held:* That the interpretation given by the plaintiff himself to the contract entered into by him dispelled any doubt which might otherwise exist as to the real intention of the parties expressed in a vague and ambiguous manner in the notarial document and was sufficient to sustain the theory of the defendant that the sale was made for a certain sum for a unit of measurement.

The facts are stated in the opinion.

*Messrs. F. González* and *J. Ruiz de Val* for the appellant.

*Messrs. E. Campillo* and *J. Martínez Dávila* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

In a notarial instrument Manuel Roig stated that as lessee of a certain property he had planted 150 *cuerdas*, more

or less, of cane and that he had agreed with Pablo Landrau upon a contract of sale of the said plantation of cane.

The substance of the agreement as reduced to writing, in so far as pertinent to any question now before us, is embodied in the following clauses:

"First.—As such lessee .Roig Hernández hereby sells to Landrau Díaz the said sugar cane crop which the vendee takes on the basis of an average production of 310 quintals per acre, or 2,325 tons of sugar cane.

"Second.—If it should result after cutting the said sugar cane that the average per acre is less than the estimated production and that the whole crop does not reach 2,325 tons of cane, the deficiency shall be against Landrau Díaz who shall bear the corresponding loss with no right to make any claim or to deduct anything from the amount that he must pay at the average of 310 quintals per acre as agreed upon. But if the average should be greater than that fixed, the excess shall be for the benefit of the vendee, the vendor not being entitled to make any claim therefor.

Fourth.—The price fixed for this sale of the sugar cane crop, which likewise constitutes the consideration of the sublease contract, shall be the market price of 1920 according to the liquidation of sugar cane delivered to the Central Vannina in the manner established by custom.

"Sixth.—Landrau Díaz is bound by this contract to pay as a preferred obligation the credit of the Banco Comercial de Puerto Rico against the said sugar cane in the manner stipulated in the said deed of agricultural advances.

"Seventh.—Until the total amount for the 2,325 tons of sugar cane hereby purchased by Landrau Díaz from Roig Daíz is paid, the sugar cane shall be security for its payment, the said Landrau Díaz not being authorized to dispose of any cane that may be produced except by the written consent of the vendor. For the resulting purposes this instrument shall suffice for Central Vannina to refuse to deliver any liquidaiton of said cane for a sum greater than the $6,000, which, as a preferred credit, Landrau Díaz must pay to the Banco Comercial de Puerto Rico as aforesaid. .

"Eighth.—The said cane is sold on the basis of 7½% of sugar which Roig guarantees to Landrau, but if the Central Vannina should agree to increase the percentage of sugar, such increase shall be for the exclusive benefit of Landrau.

"Ninth.—All expenses of cutting, hauling, transportation, etc., and other expenses incident to the grinding of said cane shall be borne exclusively by Landrau Díaz, who shall not make any discount therefor from the sum agreed upon for the 2,325 tons of sugar cane; but Roig agrees to contribute $500 towards the payment of such expenses by Landrau.

"Tenth.—Any depreciation, deterioration, reduction loss or destruction of the cane which is the subject matter of this contract shall be for the account of Landrau Díaz, who by virtue of this instrument enters into possession of the property and of the cane referred to in this contract."

In a suit involving an alleged balance in favor of plaintiff as vendor the defendant Landrau filed a counter complaint and obtained a judgment thereunder for the sum of $2,926.46 and costs.

From the statement filed by the trial judge we quote the following:

"As a result of the trial and the evidence adduced we have reached the conclusion that according to the deed of sale of sugar cane and sublease of rural property executed on January 3, 1920, the defendant purchased from the plaintiff a sugar cane crop on the basis of an average of 310 quintals of cane to the acre at the market price of 1920. That, according to the evidence and more particularly the survey, the property covers only 127, not 150, acres.

"That as shown by the settlements made by the Central Vannina —where the cane was ground—there was an average of $1.09176 to each quintal of sugar cane delivered, the total crop delivery by the defendant amounting to 36,520 quintals. So, since he contracted to deliver 39,472.61 quintals, there was, given the terms of the contract, a short delivery of 2,952.61 quintals amounting to $3,223.54.

"The evidence further shows that the defendant, before he started to harvest the sugar cane, made an advance of $6,000 to the plaintiff, with interest at 9% annually, which amount the plaintiff agreed to pay the defendant from the surplus value of the cane sold, after deducting the 310 quintals corresponding to each acre, which sum, with five months' interest, makes a total of $6,450, and deducting therefrom the sum of $3,223.54, value of cane short delivered, and $300 which the plaintiff paid the defendant by

check, a balance of $2,926.46 is due and owing by the plaintiff to the defendant.''

Plaintiff appeals and insists:

First, that the judgment in so far as it involves a dismissal of the complaint is contrary to the evidence.

Second, that even admitting a sale at so much per unit of measure or number the court below erred in finding the actual acreage to be 127 instead of 150 *cuerdas*.

Third, that the court below erred in finding that defendant made a loan of $6,000 to plaintiff.

Fourth, that the court below erred in sustaining the counter-complaint as the judgment in this respect is not supported by the evidence.

Sections 1248, 1249, 1250, 1372, 1373 and 1374 of the Civil Code read as follows:

''Sec. 1248. If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.

''If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail.

''Sec. 1249. In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract.

''Sec. 1250. However general the terms of the contract may be, there should not be understood as included therein things and cases different from those with regard to which the persons interested intended to contract.

''Sec. 1372. The obligation to deliver the thing sold includes that of placing in the possession of the vendee all that is mentioned in the contract, according to the following rules:

''If the sale of real property should be made with a statement of its area, at the rate of a certain price for a unit of measure or number, the vendor shall be obliged to deliver to the vendee, if the latter should require it, all that may have been mentioned in the contract; but should this not be possible, the vendee may choose between a proportional reduction in the price or the rescission of the contract, provided that in the latter case the decrease in the real estate is not less than one-tenth of the area given it.

"The same shall be done, even when the area appears to be the same, if any part of the real estate is not of the character mentioned in the contract.

"The rescission in such case shall only take place at the will of the vendee, when the inferior value of the thing sold exceeds one-tenth of the price agreed upon.

"Sec. 1373. If in the case of the preceding section there is greater area or number in real estate than those mentioned in the contract, the vendee shall be obliged to pay the price of the excess if the greater area or number should not exceed one-twentieth of those mentioned in the contract; but should it surpass said one-twentieth, the vendee may choose between paying the greater value of the estate or withdrawing from the contract.

"Sec. 1374. In the sale of real estate made for a fixed price and not at the rate of a specified sum for a unit of measure or number, the increase or decrease of the same shall not be considered, even when greater or less area or amount than that stated in the contract may be found.

"The same shall take place when two or more estates should be sold for a single price; but, if besides mentioning the boundaries, which are indispensable in every conveyance of real estate, their area and number should be designated in the contract, the vendor shall be obliged to deliver all that is included within said boundaries, even when they exceed the area or number specified in the contract; and, should he not be able to do it, he shall suffer a reduction in the price in proportion to what is lacking in the area or number, unless the contract be annulled by reason of the vendee not accepting the failure to deliver what had been stipulated."

Appellant, pointing out the identity of section 1374, *supra,* with article 1471 of the Spanish Code, quotes from Manresa, Vol. 10 of the Commentaries, as follows:

"It must be deduced from the contract whether the parties respectively bought and sold units of measure or number, or whether, *per contra,* they did not stipulate regarding such unit or any particular thing determined by the number thereof, but regarding an object the determination of which depended upon its confines. This is really a question of proof since it is based upon a due weighing of the acts of the parties from which the intention of the parties must be inferred.

"The delivery of a specific thing may give rise to two contingencies: either that the specific thing be delivered in the form and manner agreed on, i. e., by the delivery of everything comprised within its boundaries since the whole area comprised within the latter go to make up the specific thing; or else that the integral parts are affected by the failure to deliver to the purchaser everything contained in the boundaries. These are the two cases considered in the Code, although, in our opinion, they have not been set out sufficiently clearly to distinguish the two, making the section at first sight difficult to understand.

"If the statute is thus construed, its object is manifest and application simple. Specific objects are involved; the specific object, not the number of units, is the consideration of the contract to be delivered; the price is fixed on the basis thereof and therefore its greater or lesser area can have no bearing on the increase or reduction of the price agreed on. The reason for the statute is complete when we bear in mind that the Code sagely provides that the specific thing, for the purposes under consideration, is a single property, whether two or more properties, provided they are sold for a single price in a lump sum and not on the basis of so much per unit of measure or number."

Plaintiff, after a survey of the area in question, made in response to a claim of shortage, announced the ascertainment of an alleged excess over and above the 150 *cuerdas* referred to in the deed and demanded payment of a balance including an amount calculated upon the basis of such surplus.

No doubt this interpretation by plaintiff himself of the contract entered into by him had great weight with the trial judge, dissolved any doubt that otherwise might have existed, and sufficed to turn the scales in the court below in favor of defendant upon the main issue. In the circumstances, and viewing the evidence in the light of the text last above quoted, it is difficult to avoid the conclusion obviously drawn by the district court, that defendant's version of the transaction disclosed the true intention of the parties, somewhat vaguely and ambiguously expressed in the notarial instrument.

The evidence as to the other matters involved was conflicting, and we find no such manifest error in the weighing thereof as to require a reversal.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf and Aldrey concurred.

Mr. Justice Franco Soto took no part in the decision of this case.